Ceylon Leasing, LP v Ventura (2025 NY Slip Op 51604(U))

[*1]

Ceylon Leasing, LP v Ventura

2025 NY Slip Op 51604(U)

Decided on October 8, 2025

Civil Court Of The City Of New York, Queens County

Ibrahim, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 8, 2025
Civil Court of the City of New York, Queens County

Ceylon Leasing, LP,

against
Lisselotte Ventura, Respondent-Tenant, ARIANI GUZMAN ALEJO & 
 JOHN DOE AND JANE DOE, Respondents-Occupants.

Index No. 316377/202 

For Petitioner:
Daniels Norelli Cecere & Tavel PC Firm
272 Duffy Avenue 
Hicksville, New York 11801 
For Respondent:
Queens Legal Services Firm
89-00 SUTPHIN BOULEVARD 
FL. 5
Jamaica, New York 11435

Shorab Ibrahim, J.

After a Traverse hearing held on October 1, 2025, the court makes the following findings of facts and conclusions of law.
BACKGROUND
The affidavit of service for the nonpayment petition and notice of petition alleges in-hand delivery to respondent Lisselotte Ventura (Ms. Ventura) on October 22, 2024, at 1:45 PM. (see NYSCEF Doc. No. 3). In moving to vacate the final judgment entered based on the failure to answer the respondent disputed she was served in this manner, flatly contradicting the affidavit of service. (see Doc. Nos. 14 & 25). Respondent alleges she was not home at the time of the service and that the physical description of her noted in the affidavit is significantly different than her appearance. While the affidavit of service describes her as having brown hair, being between 40-49 years old, and weighing over 201 pounds, respondent swore in her own affidavit that she is in her early 30's with black hair and weighs approximately 140 pounds. (see and compare Doc. Nos. 3 and 25). 

THE HEARING
The Process Server
Thomas A. Dundas (Mr. Dundas), is a licensed process server, who apparently serves process for the petitioner regularly. He testified as follows: he went to the subject premises on October 22, 2024, to deliver papers [the petition and notice of petition] (papers). He accessed the building with his "skeleton" key, made his way to the 8th floor, knocked, and someone identifying themselves as "Lisselotte" answered and accepted the papers. He then made note of all the relevant descriptive information common in affidavits of service.
Mr. Dundas testified certified and regular mailings of the papers were sent to all respondents the next day. The certified mailing receipts were admitted into evidence without objection. He testified that the affidavit fairly and accurately depicts the service he performed and testified to. The affidavit of service was entered into evidence. 
Mr. Dundas' testimony was credible. His testimony was consistent with someone who has been serving process for "thirty years" and had performed the service of process described in the affidavit of service.
He submitted into evidence, as a contemporaneously made business record, what he referred to as a "traffic" sheet. This sheet comes with a bevy of pre-printed information such as the type of papers served, the address, and the persons to be served. It also has columns with ranges of information to describe the physical characteristics of the person served [if a person is served]. It also has pre-printed descriptions of where the service occurred. The server has to simply circle the ranges or describers that best fit the service.
Mr. Dundas did not produce a logbook or a printout of the electronic logbook ["e-logbook] he purports his service records are kept in.
On cross-examination, respondent was asked about how quickly he completes a typical service. Indeed, two services [under Index No. 316376-24 and 316378-24] were completed just two minutes apart [2:01 PM and 2:03 PM on October 22, 2024]. Upon review, these two services were both conspicuous place service at the same floor of the same building. (see NYSCEF Doc. No. 3 under both Index Nos.). Rather than suggesting something nefarious, the close temporal proximity of these services is likely because the two apartments are mere feet apart.
Respondent Lisselotte Ventura
Ms. Ventura testified that she was 31 years old in October 2024, that she had the same hair, same physique, and same weight. She testified she is 5 feet, 7 inches tall, weighs between 135-140 pounds and never weighed close to 200 pounds.
She testified she was not home on October 22, 2024 because she was working. She was upstate on that day, 1-2 hours away, running security camera cables. She left home between 6-7 AM and returned between 8-9 PM. She testified she never saw the process server and did not receive the petition.
On cross-examination, Ms. Ventura had a hard time remembering exactly where she was on October 21, 23 and 24, 2024.
Ms. Ventura testified that while she was away at work, her mother was home watching the children. The mother also lives in the subject premises. Ms. Ventura described her mother as being around 46-47 years old.
Closing Statements
Respondent argues that the affidavit of service alleges in-hand service to Ms. Ventura. Her denial, together with the wide variance in her physical description, clearly shows that the affidavit describes someone else.
Petitioner's counsel argues that the process server's detailed recollection renders him credible, more so than Ms. Ventura, who testified vaguely about all days surrounding the date of service. Counsel suggested that physical descriptions are easy to get wrong if someone accepts service partially blocked by a partially open door.

DISCUSSION
The burden to prove proper service of process at a traverse hearing is always with petitioner. (see Everbank v Kelly, 203 AD3d 138, 143 [2d Dept 2022]; Bushell v City of New York, 172 AD3d 1156, 1157 [2d Dept 2019]).
Petitioner must establish personal jurisdiction by a preponderance of the evidence. (see Rox Riv 83 Partners v Ettinger, 276 AD2d 782, 783 [2d Dept 2000]; Ferrer v Williams, 223 AD3d 464, 464 [1st Dept 2024]).
Whether service was properly effectuated often comes down credibility. Here, the court finds both witnesses were credible. Both were likely telling the truth. The process server likely delivered papers to the subject apartment and the person who accepted them may have identified themself as the respondent.
Ms. Ventura testified her mother would have been home [at the subject premises] at the time the papers were delivered. The physical description in the affidavit of service is significantly different from Ms. Ventura as she appeared in court, and as she credibly testified she appeared at the time of the purported service. The description in the affidavit is "off" by 15 years of age, 60+ pounds of weight and several inches of height. Ms. Ventura did not describe her mother's physical appearance, other than age. The mother's age corresponds with the description in the affidavit of service.
Significantly, Mr. Dundas never identified the respondent as the person he delivered the papers to. It would have been easy enough to point to Ms. Ventura in the courtroom and state he handed her the papers, if that indeed happened. His testimony was that the person he gave the papers to identified themself as Lisselotte Ventura. While petitioner's counsel attempted to explain the physical description discrepancy by noting that respondent could have been partly hidden by the apartment door, Mr. Dundas did not testify that his view of the person served was impaired in any way.
Also significant is the fact that no one claims that Ms. Ventura directed or participated in what appears to be a misrepresentation by the person the papers were delivered to. "In general, representations made by an individual who accepts the service of process are not binding on the defendant in the absence of proof that the defendant himself knew of such representations." (Broman v Stern, 172 AD2d 475, 476 [2nd Dept 1991]; Professional Billing Resources, Inc. v Haddad, 183 Misc 2d 829, 832 [Civ Ct, New York County 2000]).
In Caudle v Adler, (146 AD2d 598 [2nd Dept 1989]), the court held that it is plaintiff's burden to show the defendant was aware of the misrepresentation. Here, petitioner has not proffered any evidence that the respondent sought to evade service.
Petitioner, on the other hand, is privy to respondent's files, which are likely to have some identifying information, like her age. It assuredly has a superintendent or other personnel familiar with respondent and other occupants. Mr. Dundas' job [in executing the affidavit of service] would have been easier had he been armed with such information.
Deeming Service Proper Based on Facts Revealed at Hearing
So, what happens when one type of claimed service [in-hand personal service] is revealed to likely be another type [substitute service upon a personal of suitable age and discretion that resides in the apartment]?
The court has the authority to disregard late filing of an affidavit of service. (see Siedlecki v Doscher, 33 Misc 3d 18, 20 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]). It does not have similar authority to simply substitute one type of service in place of the one claimed by petitioner.
To be sure, a party can move for such relief. (see City & Suburban Fed. Sav. Bank v Frank, 243 AD2d 670, 670 [2d Dept 1997], lv denied 92 NY2d 877 [1998] ("The defect in the original affidavit of service," which claimed in hand personal delivery, "was a mere technicality and not a jurisdictional defect." Plaintiff moved to correct the error in response to the defendant's motion to vacate default judgment.)).
In other words, an error in an affidavit of service or "improperly executed" affidavit of service "is not a jurisdictional defect, if in fact service was properly made." (Best v City of New York, 101 AD2d 847, 847 [2d Dept 1984]; Mariano v Steinberg, 87 AD2d 606, 606 [2d Dept 1982; Mendez v Kyung Yoo, 23 AD3d 354, 355—56 [2d Dept 2005]).
Here, petitioner did not move for any amendment,[FN1]
and did not make the argument that the court has personal jurisdiction based on substitute service, rather than the in-hand personal service on Ms. Ventura the affidavit of service alleges. Absent such a request, the court will not act sua sponte. (see e.g. Cnty. of Nassau v Gallagher, 35 AD3d 786, 787 [2d Dept 2006]). Changing the theory of how petitioner obtained personal jurisdiction, even where the change comports with the traverse hearing evidence, would deprive the respondent of due process, if done sua sponte.[FN2]

Consequently, the court finds that respondent was not served in the manner described in the affidavit of service. As such, traverse is sustained. Respondent's motion to vacate the final judgment [and warrant] entered on respondent's default is granted and the case is dismissed. Judgment for the respondent shall enter.[FN3]

This constitutes the decision and order of the court. It will be posted on NYSCEF.
Dated: October 8, 2025
Queens, New York
SO ORDERED,
HON. SHORAB IBRAHIM
Judge, Housing Part

Footnotes

Footnote 1:Pursuant to CPLR 305(c), a court, "[a]t any time, in its discretion and upon such terms as it deems just, ... may allow any ... proof of service of a summons to be amended, if a substantial right of a party against whom the summons is issued is not prejudiced" (Jampolskaya v Ilona Genis, MD, P.C., 205 AD3d 785, 787 [2d Dept 2022] (citations omitted)).

Footnote 2:Notably, neither party sought a continuance for respondent's mother to appear.

Footnote 3:As dismissal is granted on these grounds, the court does not reach the issue of Mr. Dundas' failure to produce a logbook. The court notes that logbooks, electronica or not, are generally required to be produced at a traverse hearing. (see Clearview 1719, LLC v Vega, 35 Misc 3d 148(A), 1 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012] (a process server's failure to produce the logs, where satisfactorily explained, is not fatal to proof of service); see also Uniform Rules for New York City Civil Court [22 NYCRR] § 208.29; General Business Law § 89—cc).